IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

MELANIE R. HUGHES MORRIS and )
JESSE MORRIS, JR., Husband and Wife, )
                                                                      )
          Plaintiffs, )
                                                                      )
v.                                                 ) Case No.
                                                  ) **CJ-2018-01417**
METROPOLITAN PROPERTY AND )
CASUALTY INSURANCE COMPANY, a/k/a )
METLIFE AUTO & HOME, )
                                                                       )
          Defendant. )

DISTRICT COURT
F I L E D
APR - 3 2018
DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

Caroline Wall

## PETITION

COMES NOW the Plaintiffs, Melanie R. Hughes Morris and Jesse Morris, Jr. (hereinafter "Plaintiffs"), and for their causes of action against Defendant, Metropolitan Property and Casualty Insurance Company a/k/a MetLife Auto & Home (hereinafter "MetLife"), hereby state as follows:

### STATEMENT OF FACTS

1. Plaintiffs have an insurable interest in the property located at 7510 E. 63rd Pl, Tulsa, Oklahoma 74133 (hereinafter "Insured Premises").

2. MetLife is a corporation incorporated under the laws of the State of Rhode Island, and is an insurance company registered to engage in the business of insurance in the State of Oklahoma. MetLife may be served with process through the Oklahoma Insurance Department located at 5 Corporate Plaza, 3625 NW 56th St., Suite 100, Oklahoma City, OK 73112.

3. Plaintiffs entered into a contract for insurance with MetLife to provide coverage for their property and contents. Plaintiffs' Insured Premises is located in Tulsa, Tulsa County,

1

Oklahoma.

4. MetLife issued a Platinum Homeowners Policy of insurance, Policy No. 0834225130 (the "Policy"), to Plaintiffs which was in effect from October 19, 2016 through October 19, 2017 (hereinafter "Policy Term"). A copy of the Policy with Homeowners Declarations provided to Plaintiffs is attached as **Exhibit "1."**

5. The Policy states in pertinent part:

### CAUSES OF PROPERTY LOSS

#### SECTION I – LOSSES WE COVER
#### (COMPREHENSIVE PERILS)

...

**COVERAGE A – DWELLING**
**COVERAGE B – PRIVATE STRUCTURES**
**COVERAGE C – PERSONAL PROPERTY**

We will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A, B and C, except as excluded in **SECTION I – LOSSES WE DO NOT COVER.**

#### SECTION I – BROAD NAMED PERILS

Whenever broad named perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.

...

2. **Windstorm or Hail**
   We do not pay for loss to the interior of a building or to the personal property inside, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the opening.

6. MetLife represented to the Plaintiffs that it would conduct itself in accordance with Oklahoma law and would fully and faithfully investigate and pay claims. Plaintiffs relied on said representations.

7. During the Policy Term, the Insured Premises was damaged as a direct result of a covered loss for windstorm or hail.

2

8. Plaintiffs timely and properly submitted a claim to MetLife for the property damage incurred due to the covered loss for windstorm or hail.

9. MetLife confirmed that the cause of Plaintiffs' property damage was due to the windstorm or hail and that the loss was covered under the terms and conditions of the Policy.

10. Thereafter, MetLife assigned a date of loss of August 6, 2017 and assigned a claim number of JDH01506FT to the covered loss.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

11. Plaintiffs adopt and incorporate by reference paragraphs 1 through 10 above as if fully plead herein, and for further claims against MetLife, hereby allege as follows:

12. Plaintiffs entered into a contract for insurance with MetLife to provide coverage for the dwelling, other structures and personal property. The Policy issued by MetLife to Plaintiffs specifically provides coverage for losses caused by windstorm or hail.

13. At all times material hereto, the Policy of insurance was in full force and effect.

14. Plaintiffs provided timely and proper notice of the claim for all covered damages resulting from the covered loss for windstorm or hail during the Policy Term.

15. Plaintiffs have complied with the terms and conditions and all conditions precedent under the Policy.

16. As to the covered loss for windstorm or hail damages that underlie Plaintiffs' claim, MetLife inspected the Insured Premises on August 14, 2017 and prepared an estimate of the damages that totaled only $1,501.89 which was less than the deductible of $2,000.00 so MetLife paid the Plaintiffs $0.00. A copy of MetLife's estimate is attached as **Exhibit "2."**

17. Despite the low dollar amount of damages estimated by MetLife, the estimate confirms the Insured Premises undisputedly sustained covered damages to the roof, living room, left elevation window(s), and back elevation window(s).

18. Dissatisfied with MetLife's investigation and lowball estimate of damages, Plaintiffs submitted a copy of their Oklahoma contractor's estimate with pictures along with their request for a reinspection of the Insured Premises to MetLife on or about September 22, 2017

19. Plaintiffs estimate from their Oklahoma contractor submitted to MetLife confirmed the cost to repair only the roof totaled $36,415.94. A copy of the contractor's estimate is attached as **Exhibit "3."**

20. On or about September 28, 2017, MetLife denied Plaintiffs' request for reinspection of the damages sustained to the Insured Premises. A copy of the MetLife letter is attached as **Exhibit "4."**

21. On or about October 2, 2017, Plaintiffs again asked MetLife to reconsider its position and to reinspect the Insured Premises.

22. On October 11, 2017, MetLife adjuster Jeff Williams advised that his supervisor told him to hire an engineer to inspect the Plaintiffs' roof for any damages and to give an expert opinion on the cause of such damages. A copy of the Email is attached as **Exhibit "5."**

23. On October 12, 2017, Plaintiffs responded to MetLife's decision to reinspect with a Rimkus Consulting Group engineer by advising they will need time to find an expert engineer of their own to meet with Rimkus Consulting Group for a scheduled inspection. A copy of the Email is attached as **Exhibit "5."**

24. On January 11, 2018, Lisa M. Holliday of Rimkus Engineering Group met with

Plaintiffs' engineer, Kelly Parker of Smart House Consultants, to conduct the reinspection.

25. On January 16, 2018, Lisa Holliday of Rimkus Consulting Group completed her report which stated her retention was limited to determine the cause and extent of wind damage to the Plaintiffs' roof. Not surprising, Ms. Holliday concluded (i) the roof was not damaged by wind on or about August 6, 2017; and (ii) the water leaks inside the house were not a result of the wind storm or openings in the roof created by wind, but are result of roof conditions that predated the reported storm date. A copy of the Rimkus Consulting Group report is attached as **Exhibit "6."**

26. Conversely, on February 20, 2018, Kelly Parker of Smart House Consultants completed his report which confirms therein that he was advised by Lisa Holliday of Rimkus Consulting Group that she was "dispatched to reportedly only 'look at the wind damage.'" A copy of the Smart House Consultants' report is attached as **Exhibit "7."**

27. Kelly Parker of Smart House Consultants' expert engineer report opines in pertinent part:

   a. It is my professional opinion this roof has had recent hail damage.

   b. It is my professional opinion hail has impacted this roof in the last 12 months.

   c. It is my professional opinion on the date of loss with wind driven rain on August 6, 2017, wind driven rain did in fact enter into the home and has caused streaking and damage to the wood ceiling in the living room, kitchen, and 2nd floor office. Hail has also caused damage to (1) four window screens; (2) Chimney step flashing; (3) Chimney top cover; (4) W valleys.

   d. It is my professional opinion to repair the 4 items that were hail damaged and were not included in the original estimate by MetLife.

5

    e. After reviewing the All American Roofing estimate it is not complete with all of the damages noted in this report.

    f. It is my professional opinion to obtain a qualified estimator to estimate the repair of the items listed above.

    g. It is my professional opinion the damage to the W valleys will require removal of the W valleys and 2' of each side of the W valley to facilitate the repair.

    h. There will also be foot traffic damage due to the repair of the W valleys and will need to be addressed. It is my estimate that approximately 15% of the total roof will need to be repaired in addition to repair of the W valleys and the vent flashings and roof top caps due to foot traffic and material handling activities.

    i. It is my professional opinion the Insurance Carrier incorrectly limited the scope of work by Rimkus Consulting Group by only directing them to look at the wind damage when in essence this is both a wind and hail damage and the original MetLife estimate dated 8-14-17 had identified hail damage as several hail damaged items were in the scope of work.

A copy of the Smart House Consultants' report is attached as **Exhibit "7."**

28. By failing to fully indemnify Plaintiffs for losses covered by the Policy, MetLife has breached its contractual obligations under the terms and conditions of the Policy with Plaintiffs by failing to pay Plaintiffs all benefits owed.

29. MetLife's conduct is the proximate cause of Plaintiffs' damages.

30. As a result of MetLife's breach of contract, Plaintiffs have sustained financial losses.

31. Pursuant to 12 O.S. § 3629(B), Plaintiffs are entitled to attorneys' fees, costs, and statutory interest at the rate of 15% per annum.

32. As a result of MetLife's breach of contract, Plaintiffs have been damaged in an amount that is less than Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs, and all interest allowed by law.

## SECOND CAUSE OF ACTION
## BAD FAITH

33. Plaintiffs adopt and incorporate by reference paragraphs 1 through 32 above as if fully plead herein, and for further claims against MetLife allege as follows:

34. MetLife owes a duty to Plaintiffs to deal fairly and act in good faith.

35. MetLife breached its duty to deal fairly and act in good faith by failing to timely and properly investigate, evaluate and/or pay the Plaintiffs' claim.

36. MetLife's obligations to the Plaintiffs arise from both express written terms under the Policy and the Oklahoma Insurance Code as well as implied obligations under Oklahoma law.

37. MetLife's conduct is a material breach of the terms and conditions of the Policy entered into with the Plaintiffs and constitutes bad faith.

38. MetLife failed to retain unbiased and qualified professionals to properly evaluate Plaintiffs' covered loss.

39. MetLife improperly limited the scope of work by retained professionals in order to effectuate an outcome-oriented investigation of the Plaintiffs' claim.

40. MetLife has implemented business practices, including refusing to pay for certain damages despite knowing the scope of loss requires such repairs or replacement, in an effort to maximize its profit and underpay its insureds.

41. MetLife owes for all direct physical loss or damage caused by a peril not otherwise limited or excluded by the express terms of the Policy.

42. Despite MetLife's adjuster identifying direct physical loss or damage to the Insured Premises, MetLife failed to pay for all of the physical damage caused by the windstorm or hail.

43. MetLife ignored physical damages covered by the Policy for financial gain.

44. As a direct and proximate result of MetLife's unfair claims handling conduct, Plaintiffs' claim was unnecessarily delayed, inadequately investigated, and wrongfully underpaid. Said actions resulted in additional profits and a financial premium to MetLife.

45. MetLife engages in a profit sharing program that provides financial incentives to its employees to underpay and/or deny its insureds' claims.

46. As a result of the MetLife's conduct the Plaintiffs sustained financial losses and have been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs, and all interest allowed by law.

47. The conduct of MetLife was intentional, willful, malicious, and in reckless disregard to the rights of Plaintiffs, and said conduct is sufficiently egregious in nature to warrant the imposition of punitive damages.

48. The amount of punitive damages sought to be recovered is in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

49. Plaintiffs further allege that MetLife profited from increased financial benefits and ill-gotten gains as a direct result of the intentional and wrongful conduct described above, which resulted in further damage to the Plaintiffs and other similarly situated MetLife insureds in the State of Oklahoma.

8

## PRAYER FOR RELIEF

**WHEREFORE**, premises considered, Plaintiffs pray for judgment against Defendant, Metropolitan Property and Casualty Insurance Company a/k/a MetLife Auto & Home, as follows:

    a. Payment of all contractual benefits for all coverages afforded to Plaintiffs under the subject Policy of insurance resulting from damages to the Insured Premises during the Policy Term, together with interest on all amounts due;

    b. Actual and punitive damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

    c. Disgorgement of the increased financial benefits derived by MetLife as a direct result of its wrongful, intentional, willful, malicious and/or reckless conduct;

    d. The amount of punitive damages sought to be recovered for Plaintiffs' Bad Faith/Breach of the Common Law Duty of Good Faith and Fair Dealing action is in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code; and

    e. Pre-judgment and post-judgment interest, costs, statutory attorneys' fees, and any other relief deemed equitable and just.

Respectfully submitted,

J. DREW HOUGHTON, OBA # 18080
FOSHEE & YAFFE
P.O. Box 890550
Oklahoma City, OK 73189
Phone: (405) 232-8080
Fax: (405) 601-1103
dhoughton@fylaw.com

*ATTORNEY FOR PLAINTIFFS*

**ATTORNEY'S LIEN CLAIMED**
**JURY TRIAL DEMANDED**